### CHARLES GREEN v. JOHN MALONEY.

*Written contract—Proof of Execution—Fraud.*

Weight of testimony does not necessarily lie with the side which produces the most witnesses to prove a fact, but rather with that where the facts sworn to are most consistent with the probability of truth.

A written instrument must be duly proven to have been executed by the person sought to be charged with it. This may be done by the subscribing witness proving his own handwriting only. Such proof is *prima facie* evidence of its due exetion, and thereafter the burden of disproving the same is upon the defendant.

In order to bind an illiterate man by a written instrument, it must have been honestly and fairly read or explained to him, and be of such a nature that such a man could understand what it means. It need not be shown that he did understand it.

A person having signed a paper which was read to him is presumed to have understood it, and he may not aver against it unless he can show that it was falsely and fraudulently obtained.

(*New Castle, May, 1884.*)

ISSUE to ascertain whether or not a bond and warrant of attorney dated January 1, 1873, was an act of the defendant, executed with his knowledge, whether he was induced to sign it by fraudulent representations, whether it was fraudulently procured, and whether it was executed on the date it bears. Judgment had been entered thereon, May 2, 1881, for $621. It was admitted that the bond was not executed until April, 1881. It was stated that Maloney had been for many years a customer of Green, who kept a store at Rockland, and was largely indebted to him, and that finally Maloney was refused further credit and the bond and warrant of attorney was executed to Green. Edward P. Conner, one of the witnesses to the bond, identified the bond and his signature, but he did not remember seeing Maloney make his mark to his signature to the bond. Upon cross-examination the witness stated that he had no distinct recollection of Maloney being present, but was of the opinion that he was or had been, or the witness would not have appended his name. He had no recollection that the paper was read or explained to Maloney, who cannot read or write.

Jacob Underwood testified that he was in Green's store at Rockland on a Saturday evening in the latter part of April, 1881, between 6 and 9 p. m. He heard the bond read twice to Maloney in the presence of Conner and others, and saw Green, Maloney and Conner together at the desk behind the counter with pens in the

hands of Green and Conner.   The bond was for over $1,200, and in response to an interrogatory Green explained that it had to be twice the amount due.   Witness identified the bond in question and pointed out a blot which he had seen Green take off with a blotter.   Did not see Maloney sign the bond or make his mark, but thinks he had a pen in his hand.

Other witnesses testified to hearing the bond read to defendant and seeing him execute it, and others to having heard defendant make statements acknowledging the debt and promising to pay.

Defendant could neither read nor write.   Denied the execution of the bond or ever having owed plaintiff more than $150 at one time.   Denied the evidence on the part of plaintiff as to the execution of the bond.   Other evidence on the part of defendant tending to show fraud committed by plaintiff.

*Walter H. Hayes* and *Anthony Higgins*, for plaintiff.

*Edward G. Bradford* and *Lewis C. Vandegrift*, for defendant.

COMEGYS, C. J., charging the jury:

It is the law that fraud vitiates every contract.   There is no exception to this rule.   Where fraud is proved to have promoted the making of a contract, it is void and cannot be enforced.   Fraud taints every transaction which is the result of it.   The paper which you are required to pass upon, is in form a contract between Green and Maloney; whether it be a valid obligation, depends upon your finding of the issues you are drawn to try.   They are now repeated:

"First: Whether or not the paper writing purporting to be a bond and warrant of attorney executed by John Maloney to Charles Green, under or upon which Judgment No. 458 of the November Term, A. D. 1880, was entered in the Superior Court of the State of Delaware in and for New Castle County in favor of the said Charles Green and against the said John Maloney, was the act and deed of the said John Maloney.

Second: Whether or not the said paper writing was signed, sealed and delivered by the said John Maloney, with knowledge at the time on the part of the said John Maloney of the character and contents of the said paper writing.

Third: Whether or not the said paper writing was procured

from the said John Maloney by the said Charles Green, by or through fraudulent representations by the said Charles Green to the said John Maloney as to the nature and character of the said paper writing.

Fourth : Whether or not the said paper writing was signed, sealed and delivered by the said John Maloney, by or through the fraudulent procurement of the said Charles Green.

Fifth : Whether or not the said paper writing was prepared or executed on the day it bears date, and, if not, in what year it was prepared or executed."

The first two concern the formal execution of the bond, that is, the signing of the same by the defendant. The next two concern the question of fraud in the transaction—the defendant in the controversy before you contending that if you are satisfied that the bond was signed with all due form, yet that it was so signed by reason of false and fraudulent representations or conduct on the part of the plaintiff intended to deceive the defendant, and which did deceive him. The remaining issue is whether the deed was dated at the time it purports to have been.

The first question therefore for you to determine is this—was the bond in controversy signed, sealed and delivered by the defendant Maloney to the plaintiff Green ? The evidence upon that point is all before you in the testimony of the witnesses who have spoken to that point. It is conflicting, and you must reconcile it if you can ; if you cannot you should incline your opinion upon this subject to that side whose testimony is the weightiest. The weight of testimony does not necessarily lie with the side which produces the most witnesses to prove a fact, but rather with that where the facts sworn to are most consistent with the probability of truth, taking in view all the facts and circumstances in evidence in connection with the case. It is proper to say to you that in every case where one party seeks to charge another with the consequences of an instrument of writing, it is necessary that he prove its due execution by the latter. This is done by calling the subscribing witness (if there be one) and examining him upon the point. If such witness prove his own hand-writing, and yet may not be able to prove anything more, that alone will be sufficient to prove the execution by the party to be charged ; and if, as here, non-execution is

alleged, the duty devolves on the defendant to show that fact. But in this case, the plaintiff did not content himself with the proof he could make by the subscribing witness, Conner, but introduced and examined other witnesses, one to prove actual execution and the others circumstances surrounding the transaction and indicating execution—hearing the bond read in the defendant's presence at and immediately after the alleged execution, and the parties and subscribing witnesses being seen behind the counter with pens in their hands, &c. You will remember that Conner has no recollection whether or not Maloney had signed the bond when he put his name to it, that he did not hear it read to Maloney; and that Maloney himself swears not only that he did not sign the bond at that time or afterwards, but also that it never was read to him then, or at any other time. To this want of recollection on the part of the witness Conner, and positive denial of execution by Maloney, is opposed the testimony of Underwood, who swears that though he didn't see the bond signed, he heard Green read it behind the counter where it is alleged to have been signed, and that the parties had pens in their hands; that of Muir who swears that Green read the bond behind the counter to Maloney, and that he afterwards read the bond to him also after he came from behind the counter; and by that of James Green, the brother of the plaintiff, who swears he saw Maloney put his mark to the bond. There is also proof on the part of other of the plaintiff's witnesses that Maloney afterwards recognized in one way or another, as shown by them, indebtedness to the plaintiff. This testimony, coupled with the presumption of execution arising from the proof of the handwriting of the subscribing witness—if you believe such testimony to be reliable—would, if there were no other circumstances in the case, seem to justify the conclusion that the bond before you is the bond of the defendant Maloney. But there are other circumstances, of the efficiency of which (added to the negative testimony of Conner as to actual participation in the transaction by Maloney and the latter's positive assertion that he did not sign the bond to countervail and outweigh the testimony of the plaintiff witnesses) you and you only are to judge. One of these circumstances is, that the defendant is a wholly illiterate man. In cases of disputed execution merely, the evidence is the same in all

cases—the signing or acknowledgment of it. But no paper is valid to charge an illiterate man, one who can neither read nor write (as is the case with Maloney) unless it appear, upon a contest, that it was honestly and fairly read or explained to him, and was of such a nature that such a man could understand what it meant. It is of course not necessary, in such case of reading or explanation, to show that the illiterate ·did understand its contents and their nature; if, after a paper has been read or explained to him, he sign it, making no objection to it, nor request any explanation of it, he must, in all reason, be taken to have known what he was signing. And, in the absence of proof to the contrary, a paper read to a party and which he signed, is to be presumed to have been understood by him, and he will not be allowed to aver against it, unless he can show to the satisfaction of a court and jury that the paper was falsely and fraudulently read or explained, with intent to deceive and obtain the advantage of him. Another circumstance is, that the sum claimed for the defendant, that is, the real debt of the bond, is apparently large for a man in the defendant's circumstances, and represents a formidable degree of indebtedness on the part of a man of the defendant's means, and on account of such a claim as has been shown to have been the consideration of the instrument. The defendant had not then, nor has he now, any real estate whatever, and his support for himself and family is his own daily labor, as a worker in quarries, and that of his two minor children. The consideration of the bond was a store account, or a bill for store goods only, and that amounting to over six hundred dollars. It shows one thing certainly, a great liberality of credit on the part of the plaintiff in the conduct of his business as a country store-keeper. Another is the fact, sworn to by the witness Kalaher, that Green endeavored to get him last fall, two years and a half after the bond is alleged to have been executed, to acknowledge that when they were all of them together on the public road two years before and more than six months after the alleged signing, the bond was read to Maloney; and that in the December next following, that is last December, he in effect asked him whether he could then do so; and that he then replied to him *he did not hear the bond read.* A fact to be presented to you in connection with this is, that no proof has been offered to you that

the bond was then in the possession of Green, but in point of fact it ought to have been in that of James H. Hoffecker, Esq., whose authority to confess the judgment upon it was contained in the warrant of attorney at the foot of said bond, and not elsewhere.

As I have given you to understand, there is apparently greater proof of execution of the bond by Maloney than to the contrary— the fact of attestation by the witness Conner, the positive statement of Charles Green as to actual signing, and the evidence as to reading given by Underwood and Muir, being opposed by the positive testimony of Maloney alone, and that of Conner that he has no recollection of seeing Maloney's mark to the paper when he affixed his name to it, nor did he hear it read. To the latter however must be added the proved circumstances to which I have referred, and any others shown to you as concurrent with, or supportive of them. You of course remember all the proof.

If, after a calm review of all these facts and circumstances, you are of opinion that the mark made to the bond before you is the mark of Maloney, and that the bond was read to him before he signed it, as stated by some of the plaintiff's witnesses, then your verdict will simply be an affirmative answer to each of the issues or questions. If, on the contrary, you do not believe from the evidence that Maloney put his mark to the bond, you should answer negatively to the first and second issues. If, however, you should answer affimatively to them, and yet believe, from the circumstances proved before you, that the bond was not read over, or explained to the defendant, and that for want of this course he did not know what amount of money he was binding himself to pay by singing it—especially when you take into consideration a fact sworn to by the defendant that he applied to the plaintiff three different times before the day of the alleged execution for an account of his indebtedness which he was never able to obtain, he says—you should find for the defendant by answering in the affirmative the three remaining questions, or issues.

Gentlemen : the case is all before you, and the degree of weight you are to give to the witnesses and the facts and circumstances proved, is for you alone. Another word, and then I shall deliver the case to you.

The defence against this bond is fraud—which it is only

necessary for this case to say, means deception, artifice, misrepresentation, concealment. Where these, or any of them, exist in a transaction by which another person is sought to be charged with liability, the thing done is void. Fraud, however, is not in any case to be presumed merely—that is taken for granted without proof—but is to be proved. Now this proof may be as well made by circumstances proved which support the charge or allegation of it, including the conduct of a party as by positive testimony, which I need not say to you can rarely be offered.

To each of the first four issues the jury answered " It was," and to the fifth issue they answered " It was not."

Judgment set aside.